## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| DONNIE GENE SIXKILLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 14-CV-0731-CVE-PJC |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Now before the Court is the report and recommendation (Dkt. #19) recommending that the Commissioner's decision denying plaintiff Donnie Gene Sixkiller's application for disability benefits be affirmed. Plaintiff has filed objections (Dkt. # 22) to the report and recommendation, and he asks the Court to reverse the Commissioner's decision and remand the case for further administrative proceedings. The Commissioner has filed a response (Dkt. # 23) and asks the Court to accept the report and recommendation in its entirety.

### I.

On June 28, 2011, Sixkiller filed an application for disability benefits. Dkt. # 11, at 193-94. The application was denied initially and on reconsideration, and Sixkiller requested a hearing before an administrative law judge. Dkt. # 11, at 116, 119, 145. A hearing was set for April 2, 2013, and Sixkiller appeared at the hearing and was represented by counsel. Sixkiller testified that he attended high school up to the 12th grade and he took special education classes. Id. at 61. Sixkiller alleged a date of onset of disability of January 1, 2009, and he had not worked since that date. Id. at 62. When asked to identify what conditions prevented him from working, he claimed that swelling in

his knees, shoulder, and neck was his primary problem.  Id. at 67.  Sixkiller wears glasses to correct his vision but he does not have vision problems when using his glasses.  Id.  He suffers from high blood pressure and diabetes, and he takes medication for both conditions.  Id. at 68.  The diabetes causes Sixkiller to urinate frequently and he has gastroesophageal reflux disease. Id. at 70.  Sixkiller periodically suffers from gout attacks, and the gout causes severe swelling that may last for up to five days.  Id. at 71.  He occasionally uses crutches or a cane to get around when he has a gout attack, but he denied that he had any structural problems with his knee that caused him pain.  Id. at 77.  As to physical restrictions, he testified that he would find it difficult to lift up to 20 pounds, and he could sit for about 30 minutes and stand for about 15 minutes before needing to change position. Id. at 75.  Sixkiller claimed that he suffers from post-traumatic stress disorder (PTSD), depression, and anxiety, and he attends counseling once every four months.  Id. at 79.  He has problems with memory loss, but he denied that he had problems getting along with other people.  Id. at 80. Sixkiller occasionally makes his bed and takes his mother shopping, but he does not help with any other household chores.  Id. at 81.  His hobbies are hunting, fishing, and gardening.  Id. at 82. Plaintiff's counsel examined Sixkiller and asked about more severe attacks of gout, and Sixkiller testified that about three times a year he has a gout attack that lasts approximately a month.  Id. at 87. The ALJ called a vocational expert (VE) to testify and he initially inquired about Sixkiller's past employment.  Sixkiller had previously been employed as a delivery driver, unloader, trash collector driver, and assembly and reassembly worker, and these jobs all qualified as medium work.  Id. at 90.  The ALJ posed a hypothetical question to the VE assuming that the claimant could perform sedentary and light work, and the hypothetical claimant could not perform Sixkiller's past relevant employment.  Id. at 91.  However, the VE identified the jobs of laundry sorter, assembler, marker,

trimmer, sorter, and bonder assembler that could be performed by a person with the hypothetical claimant's RFC.  Id. at 92-93.  The VE testified that the hypothetical claimant could not perform any job if the VE assumed that plaintiff's testimony was credible in all respects and that the hypothetical claimant had all of the limitations suggested by plaintiff's testimony.  Id. at 95.

On April 22, 2013, the ALJ issued a written decision finding that Sixkiller was not disabled. Id. at 40-49.  The ALJ found that Sixkiller had the severe impairments of gout, diabetes mellitus, gastraesophageal reflux disease, problems with vision, hypternsion, problems with back, shoulders, neck and hands, depression, anxiety, post-traumatic stress disorder, and borderline intellectual functioning.  Id. at 42.  However, no impairment or combination of impairments met or medically equaled the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. at 43.  The ALJ determined that Sixkiller had mild difficulties interacting with other people and moderate difficulties as to concentration, persistence, and pace.  Id.  The ALJ explained that these impairments were not part of the residual functional capacity (RFC) assessment, because the RFC required a more detailed analysis of the evidence.  Id. at 44.  The ALJ determined that Sixkiller had the following RFC:

> the undersigned finds that the claimant has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) in that the claimant is able to lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk 6 hours in an 8-hour workday, and sit 6 hours in an 8-hour workday all with normal breaks. He can only occasionally climb, bend, stoop, kneel, crouch, crawl, push/pull, operate foot controls, reach overhead, and twist/nod the head.  He has a slight limitation in finger, feel, and grip.  He should avoid temperature extremes, damp work environment, rough uneven surfaces, unprotected heights, and fast/dangerous machinery.  He should have easy access to restrooms.  He is limited to simple, repetitive, and routine work. He is limited to slight contact with the public (brief and cursory). The claimant is afflicted with symptomatology from a variety of sources that produce mild to moderate pain, which is of sufficient severity so as to be noticeable to him at all times; but that nonetheless, he would be able to remain attentive and responsive in a work setting, and could carry out normal work

> assignments satisfactorily.  The claimant takes medication for relief of his symptomatology; the medication will not preclude work at the sedentary and light level and he will remain reasonably alert to perform required functions in the work setting.  The claimant, while functioning at the sedentary and light level, he [sic] will find it necessary to alter position from time to time to relieve his symptomatology.

Id.  The ALJ summarized Sixkiller's testimony and the medical evidence and stated that "[d]espite his impairments, the claimant has engaged in a somewhat normal level of daily activity."  Id. at 46. The ALJ considered counsel's request that Sixkiller undergo a psychological consultative examination with intelligence testing, but the ALJ found that evidence as to plaintiff's intelligence was sufficiently developed and additional testing would not be helpful.  Id.  Sixkiller was unable to perform any of his past relevant work due to his RFC, but the ALJ found that Sixkiller could perform the jobs of assembler, marker, trimmer, and bonder assembler.  Based on this finding, the ALJ concluded that Sixkiller was not disabled.  Id. at 48.

The Appeals Council found no basis to review the ALJ's decision and the ALJ's written decision became the Commissioner's final decision as to Sixkiller's claim for disability benefits. Id. at 5.  Sixkiller filed this case seeking judicial review of the Commissioner's decision denying his claim for disability benefits, and the matter was referred to a magistrate judge for a report and recommendation.  The magistrate judge has entered a report and recommendation (Dkt. # 19) recommending that the Commissioner's decision be affirmed.  Sixkiller has filed objections (Dkt. # 22) to the report and recommendation.

## II.

Without consent of the parties, the Court may refer any pretrial matter dispositive of a claim to a magistrate judge for a report and recommendation.  However, the parties may object to the magistrate judge's recommendation within 14 days of service of the recommendation.  Schrader v.

Fred A. Ray, M.D., P.C., 296 F.3d 968, 975 (10th Cir. 2002); Vega v. Suthers, 195 F.3d 573, 579 (10th Cir. 1999). The Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The Court may accept, reject, or modify the report and recommendation of the magistrate judge in whole or in part. Fed. R. Civ. P. 72(b).

## III.

Plaintiff has filed objections (Dkt. # 22) to the magistrate judge's report and recommendation, and the Court will review the specific objections raised by plaintiff under a de novo standard of review. Plaintiff's objections fall into three broad categories: (1) the ALJ's findings as to plaintiff's RFC are not supported by substantial evidence; (2) the ALJ's should have granted plaintiff's request for a psychological consultative examination; and (3) the ALJ erred at step five of the analysis when he determined that there were jobs that plaintiff could perform with his RFC.

The Social Security Administration has established a five-step process to review claims for disability benefits. See 20 C.F.R. § 404.1520. The Tenth Circuit has outlined the five step process:

> Step one requires the agency to determine whether a claimant is "presently engaged in substantial gainful activity." [Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004)]. If not, the agency proceeds to consider, at step two, whether a claimant has "a medically severe impairment or impairments." Id. An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities. See 20 C.F.R. § 404.1521. At step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation." Allen, 357 F.3d at 1142. If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent [him] from performing [his] past relevant work. See Id. Even if a claimant is so impaired, the agency considers, at step five, whether [he] possesses the sufficient residual functional capability to perform other work in the national economy. See Id.

Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  The ALJ decided this case at step five of the analysis.   At step five, the ALJ must consider a claimant's RFC, age, education, and work experience to determine if other work exists that a claimant is able to perform.  Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988).  If the claimant can adjust to work outside of his past relevant work, the ALJ shall enter a finding that the claimant is not disabled.  42 U.S.C. § 423(d)(2)(A). However, the ALJ must find that a claimant is disabled if insufficient work exists in the national economy for an individual with the claimant's RFC.  Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010).  The Commissioner bears the burden to present sufficient evidence to support a finding of not disabled at step five of the review process.  Emory v. Sullivan, 936 F.2d 1092, 1094 (10th Cir. 1991).  The ALJ issued a written decision that was reviewed by the Appeals Council, which is a final decision by an administrative agency.  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008). The Court may not reweigh the evidence or substitute its judgment for that of the ALJ but, instead, reviews the record to determine if the ALJ applied the correct legal standard and if his decision is supported by substantial evidence.   Id. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994).  "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."  Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004).  The Court must meticulously examine the record as a whole and consider any evidence that detracts from the Commissioner's decision.  Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994).

Plaintiff asserts that the ALJ made findings at step two that plaintiff had moderate difficulties maintaining concentration, persistence, or pace, and the ALJ erred by failing to incorporate these

findings into the RFC.  Dkt. # 22, at 1.  However, the law is clearly settled that findings as to concentration, persistence, pace at steps two and three do not automatically apply at step four when the ALJ is formulating a claimant's RFC.  Suttles v. Colvin, 543 F. App'x 824, 826-27 (10th Cir. Oct. 31, 2013); Beasley v. Colvin, 520 F. App'x 748, 754 (Apr. 10, 2013).[1]  The cases cited by plaintiff stand for the uncontroversial statement that an ALJ must consider evidence of mental impairments, including limitations in concentration and attention, when formulating a claimant's RFC or a hypothetical question for the VE, but none of the cases stands for the proposition that step two and three findings as to concentration, persistence, or pace must be included in the RFC.  See Jarmillo v. Colvin, 576 F. App'x 870, 874 (10th Cir. Aug. 27, 2014); Bowers v. Astrue, 271 F. App'x 731, 733-34 (10th Cir. Mar. 26, 2008); Miranda v. Barnhart, 205 F. App'x 638 (10th Cir. Aug. 11, 2005); Widerholt v. Barnhart, 121 F. App'x 833, 839 (10th Cir. Feb. 8, 2005).  The magistrate judge states that he has "repeatedly explained to counsel that the four Paragraph B criteria used at Step Three do not necessarily require specific corresponding limitations in the ALJ's RFC."  Dkt. # 19, at 14.  In this case, the ALJ included a limitation in the RFC that plaintiff could perform only "simple, repetitive, and routine work" and that plaintiff was limited to slight contact with the public. Dkt. # 11, at 44.  Similar limitations were included in the ALJ's hypothetical question to the VE.  Id. at 94.  This shows that the ALJ considered evidence relating to plaintiff's mental limitations when formulating the RFC, and the ALJ did not err by failing to expressly include limitations as to concentration, persistence, or pace in the RFC.

---

[1]     These and all other unpublished opinions cited herein are not precedential but are cited for their persuasive value.  See Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

Plaintiff argues that the ALJ was required to specify how frequently it was necessary for plaintiff to alternate between sitting and standing, and the ALJ's statement that plaintiff needed to change position from "time to time" was insufficient. Dkt. # 22, at 3. Plaintiff cites Social Security Ruling (SSR) 96-9 and claims that the ALJ was required to provide a specific assessment as to how frequently it is necessary for plaintiff to change position. Id. SSR 96-9 states that the "RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing." SSR 96-9, 1996 WL 374185. However, SSR 96-9 specifically applies to the formulation of an RFC "for less than full range of sedentary work" and the ALJ determined that plaintiff could perform light and sedentary work. Plaintiff has cited one unpublished decision of the Tenth Circuit suggesting that SSR 96-9 applies to an RFC for light work, as well as sedentary work. See Vail v. Barnhart, 84 F. App'x 1, *4 (10th Cir. Nov. 26, 2003). In cases where the ALJ determines that a claimant cannot perform the full range of work at a particular exertional level, the ALJ's "description of his findings in his hypothetical and in his written decision must be particularly precise." Id. District courts in the Tenth Circuit have consistently followed Vail and have remanded cases for further administrative proceedings when the ALJ fails to specify how long a claimant can sit or stand without a change in position when the claimant can perform less than the full range of light work. Ward v. Colvin, 2015 WL 1040523 (D. Colo. Mar. 5, 2015); Staggs-Homady v. Colvin, 2014 WL 7429871 (W.D. Okla. Dec. 31, 2014); Waltemire v. Colvin, 2014 WL 3809189 (D. Kan. Aug. 1, 2014).

In this case, the ALJ's hypothetical question to the VE assumed that the hypothetical claimant could perform work at the light and sedentary levels with some additional restrictions, and the claimant "will find it necessary to alter position from time to time to relieve the

symptomatology." Dkt. # 11, at 91.  The ALJ included limitations of up to six hour of standing and walking and up to six hours of sitting per eight hour work day "with normal breaks."  Id. at 90.  The VE identified several jobs at the light and sedentary levels that the hypothetical claimant could perform.  However, the ALJ subsequently asked the VE to assume that plaintiff's testimony was entirely credible and that the testimony was supported by medical evidence, and the VE testified that a hypothetical claimant with the additional restrictions required by plaintiff's testimony could perform no jobs in the regional or national economies.  Id. at 95.  Plaintiff had testified that he could sit for 30 minutes and stand for 15 minutes without needing to change position, and it reasonable to assume that the ALJ included such a limitation in response to the final hypothetical question posed by the ALJ.  Id. at 75.  The ALJ noted in his written decision that plaintiff testified that he could "sit 30 minutes, stand 15 minutes, and walk 55 steps," but the RFC did not include these limitations and the ALJ's credibility findings did not explain why this aspect of plaintiff's testimony was not credible.  Id. at 44-47.  The RFC does state that plaintiff "will find it necessary to alter position from time to time," and that plaintiff could stand or walk and/or sit for up to six hours in an eight hour workday with "normal breaks."

The Court finds that RFC formulated by the ALJ is not sufficiently precise considering that the ALJ determined that plaintiff could not perform the full range of light work, and plaintiff's testimony suggested that he subjectively believed that he needed to change position frequently due to his symptoms.  The ALJ did specify the maximum amount of time that plaintiff could stand or sit in eight hour work day, but the RFC includes only vague guidance as to plaintiff's need to alternate positions.  The VE's testimony does not make clear that the VE was specifically asked to consider whether a requirement that plaintiff change positions after sitting for 30 minutes or standing

for 15 minutes would affect what jobs were available to plaintiff, but the VE's answer to the final hypothetical question implies that the VE considered such a limitation and found that plaintiff would be unable to work in any job.  The ALJ failed to make credibility findings on this issue and this calls into question whether the hypothetical questions to the VE and the RFC are adequate due to the failure to include more specific limitations as the frequency of changing positions from sitting or standing.  Due to the lack of specificity in the hypothetical question to the VE and the RFC, the Court finds that the case should be reversed and remanded to allow the ALJ to make additional findings as to plaintiff's need to alternate positions and the frequency of such need.

**IT IS THEREFORE ORDERED** that the report and recommendation (Dkt. # 19) is **rejected**, and the Commissioner's decision to deny plaintiff's claim for disability benefits is **reversed and remanded**.  A separate judgment is entered herewith.

**DATED** this 29th day of March, 2016.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE